**NOT FOR PUBLICATION**                                    **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROGER F. DURONIO**, | Civil Action No.: 10-1574 (JLL) |
| Petitioner, | |
| v. | |
| **UNITED STATES OF AMERICA**, | |
| Respondent. | **OPINION** |

**LINARES,** District Judge.

This matter comes before the Court on a motion by Petitioner Roger F. Duronio (hereinafter "Petitioner" or "Duronio") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Respondent the United States (hereinafter "the Government") submitted an answer in response to the motion.  No oral argument was held. Fed.R.Civ.P. 78.  The Court has considered both parties' submissions, and for the reasons set forth below, Duronio's motion is denied.

## BACKGROUND

### A.  Conviction, Sentence, Motion for a New Trial, and Appeal

Insomuch as the Court writes primarily for the parties, and in light of the fact that a full trial has been heard, the Court will assume the parties' familiarity with the underlying facts and discuss only the factual and procedural background necessary to brief this opinion.  On July 19, 2006, following a six-week trial, Duronio was convicted of one count of securities fraud and one count of computer fraud, and was also found not guilty of two counts of mail fraud.  United States v. Duronio, No. 02-0933, 2006 WL 3591259, at *1 (D.N.J. Dec. 11, 2006).  Duronio was

former UBS Paine Webber (hereinafter "UBS") systems administrator.  (Gov't Br. at 4).  His computer fraud conviction stemmed from his execution of a logic bomb on March 4, 2002.  (Id.) The logic bomb damaged over 2,000 UBS computer stations nationwide and cost UBS $3.1 million to repair the damage.  (Id.)  Duronio's security fraud conviction stemmed from his purchase of over $20,000 worth of UBS "put options," prior to the execution of the logic bomb, in anticipation that the logic bomb would decrease UBS stock and earn him profit.  (Pet'r's Br. at 1).

Duronio subsequently moved for a new trial, asserting that the record demonstrated substantial evidence of prosecutorial misconduct, violations of the rules of discovery, and other violations of the federal criminal rules.  Duronio, 2006 WL 3591259, at *1.  However, on December 11, 2006, the district court denied Dunorio's motion for new a trial.  Id.

On December 13, 2006, the district court sentenced Duronio to imprisonment for a 97-month term on each count, to be followed by a 3-year term of supervised release on each count, as well.  (Sentencing Mins., ECF No. 133).  The district court also ordered Duronio to pay $3,162,376 in restitution. (Id.)

On December 19, 2006, Duronio filed a notice of appeal with the United States Court of Appeals for the Third Circuit. On appeal Duronio argued: 1) the district court erred in denying his motion to dismiss the indictment based on his claim that his due process rights were violated when UBS and its agents, without the knowledge of the government, destroyed computer hard drives belonging to a former colleague; 2) both the district court and the prosecution deprived him of due process of law by denying his request for a missing witness instruction; and 3) the prosecution violated his right to due process of law by shifting the burden of proof to the defense.  United States v. Duronio, No. 06-5116, 2009 WL 294377, at*1-2 (3d Cir. Feb. 9,

2009). Duronio also raised three claims of error in relation to his sentence. <u>Id.</u> at *3. The Court held that: 1) Duronio's challenge to the destruction of the evidence did not merit relief; 2) there was no foundation for any missing witness instruction; and 3) the prosecution's comments were "well within the bounds of proper argument" and had not shifted the burden of proof onto the defense. <u>Id.</u> at *1-3. Accordingly, the Third Circuit affirmed Duronio's conviction and sentence. <u>Id.</u> at *3.

### B. Petitioner's Section 2255 Claims

Duronio now asks the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He asserts that his Sixth Amendment right to counsel was violated because his attorney, Mr. Chris Adams, was ineffective in representing him. In particular, Duronio claims that Mr. Adams was ineffective for (1) failing to object to the alleged violation of Petitioner's Sixth Amendment right to confront a witness; (2) failing to object to the court's replacement of a juror with an alternate juror after deliberations had begun; (3) failing to move to exclude evidence allegedly seized under the authority of an unconstitutional search warrant; (4) failing to investigate the fingerprints found on a relevant piece of evidence; (5) failing to investigate, identify and acquire the evidence necessary for an adequate defense at trial; (6) stipulating to the admissibility of a hearsay report as evidence; (7) failing to prove the unreliability of the Government's evidence and expert methods; (8) failing to challenge the admissibility of certain evidence; (9) failing to challenge the methods of analysis used by the Government's expert witness; (10) making several "tactical errors" throughout the course of the trial; (11) failing to present "positive defenses;" (12) failing to obtain a missing witness charge; (13) failing to adequately defend the securities fraud charges of the indictment; (14) failing to object to the

Government's opening statement and contradictions in Government witness testimony;  and (15) acting as an "executive functionary" of the court.  See (Pet'r's Br. at 3-69).

Duronio also asserts that his Sixth Amendment right to counsel was violated because his appellate counsel, Mr. Michael Baldassare and Ms. Claudia Van Wyk, provided ineffective assistance by failing to raise some of Mr. Adams's perceived errors on appeal.  See (Pet'r's Br. at 2, 9, 13).

## LEGAL STANDARD

### A.  28 U.S.C. § 2255

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his sentence.  Section 2255 provides, in relevant part, that a prisoner has the right to be released if the sentence (1) was imposed in violation of the Constitution or laws of the United States; (2) was imposed by a court lacking jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

The decision whether to order a hearing when a defendant files a motion pursuant to 28 U.S.C. § 2255 is left to the sound discretion of the Court.  Government of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  However, the Court "must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief."  Id.

In considering the instant § 2255 motion, the Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  United States v. Garvin, 270 Fed.Appx. 141, 143 (3d Cir. 2008) (citing United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005)).  Given Petitioner's *pro se* status, the Court will construe the instant

motion liberally and to less stringent standards than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Hughes v. Rowe, 449 U.S. 5, 9 (1980). However, "[a] writ of habeas corpus does not encompass all sentencing errors, and should not be used as a substitute for direct appeal." Sasonov v. United States, 575 F.Supp.2d 626, 631 (D.N.J.2008).

### B. Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, Petitioner must satisfy the two-part test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). "Under Strickland, a habeas petitioner must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different." Rainey v. Varner, 603 F.3d 189, 197 (3d. Cir. 2010). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. If Petitioner fails to demonstrate that he suffered prejudice as a result of counsel's alleged deficiencies, the Court need not determine whether counsel's performance was constitutionally deficient. See id. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.")

It is firmly established that the Court must consider the strength of the evidence against the defendant in deciding whether the Strickland prejudice prong has been satisfied. See Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999); see also Strickland, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support"). Moreover, conclusory allegations in a § 2255 petition "may be disposed of without further investigation by the District Court." United States

5

v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (citing United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988)).  Finally, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. With this framework in mind, the Court now turns to Petitioner's arguments and will first address whether Petitioner set forth facts to support the arguments that he suffered prejudice as a result of Mr. Adams's alleged deficiencies.

## LEGAL DISCUSSION

Duronio claims that habeas relief is warranted because his trial and appellate attorneys each failed to provide him with effective assistance of counsel.  The Court has considered each of the Petitioner's arguments, and based on the reasons that follow, Petitioner's 2255 motion is denied inasmuch as Petitioner has failed to demonstrate that but for his counsels' alleged deficiencies, there is a reasonable probability that the proceedings would have resulted in a different outcome.

### A. Evidentiary Hearing

As the motion, files and record of the case conclusively show that Petitioner is not entitled to relief, he is not entitled to an evidentiary hearing.  Forte, 865 F.2d at 62 (the Court need not hold an evidentiary hearing where the record, as here, shows "conclusively that the movant is not entitled to relief").  Petitioner's motion raises no issues of material fact and relies instead on the sentencing record to support purely legal arguments.  The Court has addressed these arguments

and has concluded that they are without merit.

## B. Petitioner's Assertions of Ineffective Assistance of Counsel

### 1. Counsel's Failure to Object to the Government's Alleged Violation of Petitioner's Sixth Amendment Right to Confront a Witness

Duronio argues that Mr. Adams should have, but failed to, object to the Government's expert witness analyzing the @Stake report because the report was testimonial in nature and thereby denied him his Sixth Amendment right to confront the witness against him—namely, the author of the @Stake report.[1]  (Pet'r's Br. at 6).  According to Duronio, the Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004) held that a defendant's Sixth Amendment right is violated where "testimonial statements of witnesses absent from the trial have been admitted" and the defendant does not have to opportunity to cross examine.  (Pet'r's Br. at 6).  Duronio argues Mr. Adams's failure to recognize the alleged "Crawford violation" constitutes inadequate assistance.  (Id.)  In addition, Duronio argues that Mr. Adams should have, but failed to question: 1) the author of the @Stake report's credentials; 2) the author of the @Stake report's failure to pursue a lead pointing to a certain Charles Richard's computer as the source of logic bomb; and 3) the "lack of Judicial [sic] certification of the author."  (Id. at 6-7).

First, neither of Duronio's assertions satisfy the prejudice prong of Strickland because he fails to provide any evidence to demonstrate a reasonable probability that "but for counsel's error," the trial would have resulted differently.  466 U.S. at 687.  "It is well settled that conclusory allegations are insufficient to entitle a petitioner to relief under § 2255."  Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999).  Duronio's failure to provide factual support for these two allegations provides grounds to dismiss these claims.  See Langston v.

---

[1] As explained in Respondent's Answer, @Stake is a computer forensic company that UBS retained to analyze the attack and determine its cause.  (Gov't Br. at 6).

United States, 105 F. Supp. 2d 419, 425 (E.D.P.A. 2000) (finding petitioner failed to set forth a claim of ineffective assistance of counsel, "[e]ven affording the necessary deference to [petitioner's] *pro* se submission," because, aside from petitioner's conclusory allegations, she failed to provide evidence to support her allegations).

Second, Duronio's argument in regard to the alleged Crawford violation lacks merit. The holding in Crawford solely bars the "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Davis v. Washington, 547 U.S. 813, 821 (2006) (quoting Crawford, 531 U.S. at 53-54). Statements that are considered testimonial in nature are statements made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52 (recognizing various definitions without endorsing any one in particular). Yet, Petitioner concedes that the @Stake report had previously been placed into evidence by the Government. (Pet'r's Br. at 6). Moreover, in the face of the detailed facts adduced in the submissions by the Government, Petitioner's vague and conclusory allegations to the contrary are patently inadequate. Specifically, the Government argues that the @Stake report  did not implicate Crawford because "[t]here was no expectation of its use at a later criminal trial," rather it "was created by a non law enforcement entity for the purpose of ferreting out UBS insiders who were responsible for the attack on its system." (Gov't Br. at 10). Since the @Stake reports were created by a digital forensic analysis team that was conducting an internal UBS investigation, as opposed to a law enforcement agency, the author did not reasonably expect the report would be subsequently used at trial and, therefore Crawford is not implicated. See (Pet'r's Br., at App. 17).

Third, in regard to Mr. Adams's alleged failure to challenge the @Stake reports author's credentials, even assuming it had an effect on the outcome of the trial, Petitioner's assertion directly criticizes a strategic decision made by Mr. Adams. (Pet'r's Br. at 6-7). Notably, under Strickland, counsel is entitled to a strong presumption that his or her conduct was within the range of "reasonable professional assistance," and the defendant bears the burden of overcoming "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689. Mr. Adams's decision not to exhaustively challenge the author's credentials, as well as his decision not to object to the Government's witness reading from the @Stake report, falls within the type of strategic decisions protected under Strickland. Id. Petitioner here fails to provide sufficient evidence to overcome the presumption that Mr. Adams's decisions constituted sound trial strategy. Therefore, Petitioner's claim of ineffective counsel must fail as he cannot demonstrate that Mr. Adams's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687.

## 2. Counsel's Failure to Object to the Court's Replacement of a Juror with an Alternate Juror after Deliberations had Begun

According to Duronio, Mr. Adams should have, but failed to object to the court replacing a juror with an alternate juror one day after deliberations had started, which violated United States v. Gambino, 788 F. 2d 938, 948-949 (3d Cir. 1986), *cert. denied*, 479 U.S. 825 (1986). (Pet'r's Br. at 8-9). Duronio notes that Mr. Adams also failed to correct his "misunderstanding of applicable law" in motions for retrial. (Id. at 9). Additionally, Duronio argues that his appellate counsel, failed to raise the issue on appeal, which constitutes ineffective assistance of counsel. (Id.).

Duronio's legal argument is without merit because a court has the discretion to: 1) retain or discharge alternate jurors once deliberations begin; and 2) decide whether to proceed with eleven jurors or to substitute a juror with an alternate juror that has been discharged.  See Fed. R. Crim. P. 23(b)(3)[2]; see also Fed. R. Crim. P. 24(c)(3)[3].  Therefore, it was in the trial court's discretion to proceed as it did.  As such, Petitioner cannot demonstrate that but for this perceived error, there is a reasonable probability that the outcome of the trial would have resulted differently.  Notably, Duronio set forth this very same argument as grounds for a new trial and this Court found that it suffered the same flaw.  See United States v. Duronio, No. 02-0933, 2006 WL 3591259, at *7 (D.N.J. Dec. 11, 2006) ("This Court cannot agree that its decision to dismiss the alternate jurors, pursuant to its authority under Rule 24(c), provides the basis for a new trial, or in any way prejudiced Defendant").

While the Strickland test was initially formulated in the trial context, it applies with equal force to the Court's analysis of Petitioner's challenge to the performance of appellate counsel. See United States v. Mannino, 212 F.3d 835, 840 n.4 (3d Cir. 2005) (applying Strickland analysis towards appellate counsel's performance). Therefore, because both of Petitioner's assertions fail to satisfy the prejudice prong of Strickland, 466 U.S. at 687, the Court finds that Petitioner did not receive ineffective assistance of counsel at either the trial or appellate level, when the claim was not raised.

3.     **Counsel's Failure to Move to Exclude Evidence Allegedly Seized Under the Authority of an Unconstitutional Search Warrant**

---

[2] Rule 23 states, in relevant part, "[a]fter the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror." Fed. R. Crim. P. 23(b)(3).
[3] Rule 24 states, in relevant part, "[t]he court may retain alternate jurors after the jury retires to deliberate . . . [i]f an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." Fed. R. P. R. 24(c)(3).

Duronio next argues that Mr. Adams did not adequately assist him because he failed to move to exclude the evidence seized under the authority of an allegedly unconstitutional search warrant and also failed to request a hearing on the search and seizure. (Pet'r's Br. at 12-13). Additionally, Duronio points out that his appellate counsel also failed to raise the generality of the search warrant. (Id. at 13). Duronio argues the warrant that authorized agents to search his home for a computer code was unconstitutional because it lacked specificity. (Id. at 11-12). His argument is based upon statements made by agents while on direct and cross examination, which indicated that the agents were looking for evidence relating to the computer code, but did not know exactly what the computer code looked like. (Id.) Petitioner cites to Stanford v. Texas, 379 U.S. 476 (1965) for the proposition that a general warrant is forbidden by the Fourth Amendment. (Pet'r's Br. at 11).

The Fourth Amendment unambiguously states, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and *the persons or things to be seized*." U.S. CONST. amend. IV (emphasis added). However, Petitioner's assertions are conclusory in nature. Duronio fails to state *why* the warrant was deficient in particularity, and fails to provide any evidence in support thereof. In fact, according to the agent's testimony, which Duronio includes in his brief, the warrant described the things to be searched as "evidence relating to the computer code, such as in the form of IP addresses." (Pet'r's Br. at 12).

Since the Strickland test applies with equal force to the Court's analysis of counsels' performance at the trial, as well as the appellate level, the Court will consider both of Petitioner's assertions of ineffective counsel here together. Mannino, 212 at 840 n.4. Petitioner's vague and conclusory allegations, regarding the lack of particularity in the search warrant, are insufficient

11

to justify relief. <u>Sepulveda</u>, 69 F. Supp. 2d at 639-40 ("It is well settled that conclusory allegations are insufficient to entitle a petitioner to relief under § 2255"). Therefore, the Court finds that Duronio's failure to provide factual support for these two allegations provides grounds to deny both of his claims of ineffective assistance of counsel, at the trial and appellate level. See <u>Langston</u>, 105 F. Supp. 2d at 425 (finding petitioner failed to set forth a claim of ineffective assistance of counsel, "[e]ven affording the necessary deference to [petitioner's] *pro* se submission," because, aside from petitioner's conclusory allegations, she failed to provide evidence to support her allegations). Additionally, Petitioner failed to demonstrate a reasonable likelihood that the trial would have resulted differently but for counsels' perceived errors, as required by the <u>Strickland</u> prejudice prong. 466 U.S. at 687. Given Petitioners' insufficient showing of prejudice, the Court need not address whether Mr. Adams's representation was constitutionally deficient. <u>Id.</u> at 697.

### 4. Counsel's failure to investigate the fingerprints found on a relevant piece of evidence

During the search of Duronio's home on March 14, 2002, agents allegedly found a one-page computer print-out containing a particular source file. (Pet'r's Br. at 14). Petitioner alleges that the FBI tested the document for fingerprint analysis and subsequently issued a report indicating that the fingerprint identification was a failure. <u>Id.</u> Petitioner now alleges ineffective assistance of counsel because Mr. Adams failed to: 1) request that the FBI report be produced as evidence; 2) have the computer print-out re-tested; and 3) investigate whose finger print was on the computer print-out, for the purpose of potentially exonerating the defendant or revealing government misconduct. (Pet'r's Br. at 14-15). Petitioner cites to <u>Strickland</u>, 466 U.S. at 691, for the proposition that counsel has a duty to investigate facts. (Pet'r's Br. at 15).

12

However, contrary to what Duronio implies, <u>Strickland</u> does not impose an all-encompassing duty on counsel to investigate every fact.  The court in <u>Strickland</u> stated, in relevant part, that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation" and "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  466 U.S. at 690-91.

Since Mr. Adams's decision not to investigate the fingerprint any further is given a "heavy measure of deference," Petitioner must support his assertion with facts and evidence to demonstrate that counsel's strategic decision fell below an objective standard of reasonableness. <u>See</u> <u>Strickland</u>, 466 U.S. at 691, 687; <u>see also</u> <u>Zettlemoyer</u>, 923 F.2d at 298 ("[Petitioner] cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention").  Petitioner's failure to overcome the presumption that Mr. Adams's decision was not sound trial strategy is reason for the Court to deny his claim.  <u>See</u> <u>U.S. v. Brown</u>, No. 99-730, 2006 WL 3000960, at *9 (E.D.Pa. Oct. 18, 2006).

Moreover, Petitioner also fails to satisfy the <u>Strickland</u> prejudice prong as he failed to demonstrate a reasonable probability that the trial would have resulted differently if Mr. Adams had conducted further investigation of the fingerprint.  466 U.S. at 687.  Petitioner failed to show what further investigation of the finger prints would have yielded with any additional evidentiary support.  <u>See</u> <u>United States v. Gray</u>, 878 F.2d 702, 712 (3d Cir. 1989) ("Such a showing may not be based on mere speculation about what the witnesses [counsel] failed to locate might have

said"). Having found that Petitioner both failed to demonstrate he was prejudiced by Mr. Adams's alleged deficiencies and failed to overcome the presumption that Mr. Adams's decision constituted sound trial strategy, the Court finds that Petitioner did not meet his burden to demonstrate that he received ineffective assistance of counsel.

### 5. Counsel's Failure to Investigate, Identify and Acquire the Evidence Necessary for an Adequate Defense at Trial

Duronio argues that Mr. Adams failed to investigate, identify and acquire the evidence necessary for an adequate defense at trial. (Pet'r's Br. at 16-18). More specifically, Petitioner argues that Mr. Adams's failure to subpoena the full set of tapes retrieved by the UBS backup system Legato, constituted inadequate assistance of counsel. (Id. at 19).

First, Petitioner's claim fails to assert that the additional missing evidence would have changed the outcome of the trial, as required by Strickland. 466 U.S. at 694. In a lengthy document in response to the Government's Answer entitled "Reply (II)," Petitioner argues that "a complete set of facts, brings a complete picture, one less able to be misconstrued or misinterpreted." (CM/ECF No. 24, at 10) (hereafter "Response"). However, Petitioner does not demonstrate that there is a reasonable probability anything contained on the Legato tapes would have changed the outcome of the trial. Having determined that Petitioner failed to demonstrate that he suffered prejudice as a result of counsel's alleged deficiencies, the Court need not determine whether counsel's performance was constitutionally deficient. See id. at 697. ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one").

Moreover, while Petitioner asserts that the Legato tapes were the "best evidence," he failed to demonstrate why that was the case. See (Pet'r's Br. at 71) ("There was not one shred of

reliable evidence.  The [UBS 4 and 8 mm magnetic tapes] have no chain of custody and aren't the best evidence.  The Legato tapes are the best evidence.").[4]  Petitioner's failure to factually support his conclusory assertion of ineffective assistance of counsel provides grounds for the Court to deny his claim.  See Sepulveda, 69 F. Supp. 2d at 639-40 ("It is well settled that conclusory allegations are insufficient to entitle a petitioner to relief under § 2255"); see also Langston, 105 F. Supp. 2d at 425 (finding petitioner failed to set forth a claim of ineffective assistance of counsel, "[e]ven affording the necessary deference to [petitioner's] *pro se* submission," because, aside from petitioner's conclusory allegations, she failed to provide evidence to support her allegations).

### 6.    Counsel's Stipulation to an Unchallenged Hearsay Report as Evidence

Duronio again asserts that the @Stake report contains hearsay statements.  (Pet'r's Br. at 20).  Duronio also points out that the author of the @Stake report was never certified by the court as an expert and Mr. Adams neither called the author to testify, nor cross examined him.  (Id. at 22-23).  Petitioner therefore argues that by stipulating to the admissibility of the report as evidence and failing to directly challenge "[t]he vast majority of the assertions and conclusions" included within the report, Mr. Adams removed his right to be confronted by witnesses, in violation of Crawford, which thereby constitutes ineffective assistance of counsel.  (Id. at 23).

Duronio concedes "[t]here is a high probability that without the stipulation the prosecution could overcome an objection to thier [sic] admission into evidence. . . ." (Id. at 24).

---

[4] As Petitioner is pro se, the Court construes his submissions liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972). To the extent that Petitioner's argument regarding Defense counsel's failure to obtain the full set of Legato tapes can be construed as an argument regarding Federal Rule of Evidence 1001-1002, sometimes referred to as the "best evidence rule," that argument is misplaced.  "As the language of Rule 1002 makes clear, a party need only produce original documents if a witness testifies to the actual content of a writing," recording, or photograph.  US v. Miller, 248 Fed. Appx. 426, 2007 WL 2745774, at * 3 (3d Cir. 2007); Fed.R.Evid 1001-1002.

In light of Petitioner's *pro se* status, the Court construes this argument to actually be that there was a high probability the prosecution *could not* overcome an objection to the admission of the @Stake report.  However, Petitioner's assertion of ineffective assistance of counsel is deficient nonetheless.  Petitioner's claim suffers the same defect as all of his previous assertions of ineffective counsel.  His unsupported, conclusory allegations do not sufficiently demonstrate a reasonable probability that but for Mr. Adams's stipulation, the trial would have resulted differently.

This is particularly so because, as the Government argues, the evidence "was admissible as a business record of UBS since it was not created for prosecution purposes; and secondly, it had a tendency to exculpate the defendant." (Gov't's Br. at 22).  Petitioner counters that the @Stake report was not admissible as a business record because "[i]t was not created in the ordinary course of UBS's regularly-conducted business, since the document is a forensic analysis of a computer outage that happened at UBS, and UBS is a bank, not a computer forensic company; and the Paine Webber portion of UBS was a brokerage firm, also not a forensic company." (Pet'r's Reponse, 12).  However, Federal Rule of Evidence 803(6) applies to documents kept in the regular course of business. See 803(6).  This does not require that the business author the document itself.  Rather, "the foundational requirements are: (1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business." U.S. v. Blakeslee, 423 Fed.Appx. 136, at *6, (3d Cir. 2011) (quoting U.S. v. Sokolow, 91 F.3d 396, 403 (3d Cir. 1996).  Petitioner does not attack the @Stake report's admissibility on any of these grounds and, as discussed above, admission of

16

the report did not violate the Confrontation Clause.  As a result, Petitioner fails to satisfy the Strickland prejudice prong. 466 U.S. at 687.

Additionally, as discussed above, under Strickland, counsel is presumed to have acted within the range of "reasonable professional assistance," and the defendant bears the burden of overcoming "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  466 U.S. at 689.  Here, Petitioner fails to provide sufficient evidence to overcome the presumption that Mr. Adams's decision to stipulate to the admissibility of the @Stake report constituted sound trial strategy.  Petitioner's claim of ineffective counsel must therefore fail, as he cannot demonstrate that Mr. Adams's representation fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 668. See Brown, 2006 WL 3000960, at *9 (denying petitioner's claim of ineffective assistance of counsel because he failed to "meet the burden of overcoming the presumption that trial counsel's stipulation might be considered sound trial strategy falling within the wide range of reasonable professional assistance").

### 7.  Counsel's Failure to Prove the Unreliability of Government's Evidence and Expert Methods

Here, Duronio asserts that that the backup tapes, the Verizon billing reports of the usage of his home DSL line, and the Government's expert witness' testimony were all based on unreliable methods. (Pet'r's Br. at 25).  Duronio argues that Mr. Adams's failure to request a Rule 104 hearing for the court to determine the admissibility of the UBS supplied evidence constitutes inadequate assistance of counsel.  (Id. at 26).  He also argues that Mr. Adams provided ineffective assistance because Mr. Adams failed to "remind the court there were chain of custody issues" on certain backup tapes and that they were made explicitly for prosecution

purposes.  (Id. at 28).  In Duronio's Response, he argues that "the tapes had no chain of custody, were made by a failed process, were incomplete, and were selected to represent Roger Duronio perpetrated the outage . . . Defense Counsel should have pointed these facts out to the Court . . . Objecting: telling the Court rule 106 demands the tapes be complete, the tapes were entered as 'complete backups,' may have helped."  (Pet'r's Response, 13).  Lastly, Duronio argues that Mr. Adams's failure to demonstrate the unreliability of the backup tapes, as well as his failure to object to their admission into evidence and to successfully argue his application to remove the tapes from evidence all constitute ineffective assistance of counsel.  (Id. at 29).

Petitioner improperly asserts "[w]hether [Mr. Adams] would have been successful or not is not the issue."  (Id. at 26).  In order to satisfy the Strickland prejudice prong, however, Petitioner must demonstrate a *reasonable probability* that but for Mr. Adams's alleged deficiencies, the trial would have resulted in a different outcome.  466 U.S. at 687.  Yet, Petitioner failed to do so here.  Petitioner also argues that all of the aforementioned evidence fails to "meet the Rules of Evidence," without citing any additional support to substantiate his claim. (Pet'r's Br. at 29).  Petitioner's failure to factually support these allegations provides grounds for the Court to deny his claim.  See Sepulveda, 69 F. Supp. 2d at 639-40 ("It is well settled that conclusory allegations are insufficient to entitle a petitioner to relief under § 2255"); see also Langston, 105 F. Supp. 2d at 425 (finding petitioner failed to set forth a claim of ineffective assistance of counsel, "[e]ven affording the necessary deference to [petitioner's] *pro se* submission," because, aside from petitioner's conclusory allegations, she failed to provide evidence to support her allegations).

In his Response, Duronio again asserts that Mr. Adams should have objected pursuant to "rule 106."  (Pet'r's Reponse, 14).  Insofar as Petitioner asserts that Mr. Adams should have

18

objected under Federal Rule of Evidence 106, the Court determined above that Duronio failed to assert that the additional missing evidence would have changed the outcome of the trial and similarly fails to do so in his chain of custody discussion.  Namely, Duronio states that objecting on these grounds "may have helped."  (Id.)  Simply put, this does not demonstrate the requisite level of prejudice necessary for an ineffective assistance claim.

Having already found that Petitioner failed to satisfy the Strickland prejudice prong, the Court need not determine whether counsel's performance was constitutionally deficient.  466 U.S. at 668, 697.  The Court finds that Petitioner did not meet his burden to demonstrate that he received ineffective assistance of counsel on this ground.

### 8.  Counsel's Failure to Challenge the Admissibility of Certain Evidence

Here, Duronio argues that because the Verizon billing records were inconsistent in their completeness and their internal recording of information, they are unreliable under "803(b)." (Pet'r's Br. at 32-33).  In his Response, Duronio adds that "[t]hese billing records do not have a line saying how much money is due, how to pay the money that is due, or who should pay the money" and states that the records "failed to consistently record the same information."  (Pet'r's Response, at 15).  He concludes that Mr. Adams's failure to challenge their admissibility and his stipulating to their admissibility as business records constitutes "deficient representation." (Id. at 32-33).

Petitioner's assertion of ineffective assistance of counsel fails to establish: 1) that Mr. Adams would have been successful in keeping the Verizon billing records out of evidence; and 2) their absence would have changed the outcome of the trial, as required by Strickland.  466 U.S. at 694.  A petitioner cannot establish a reasonable probability that the jury's verdict would

have been different if not for counsel's errors "based on mere speculation." See Gray, 878 F.2d at 712 (citing United States ex rel Cross v. DeRobertis, 811 F.2d 1008, 1016 (7th Cir. 1987)) ("Under usual circumstances, we would expect that . . . information [obtainable through an adequate investigation] would be presented to the habeas court . . . ."). Given the conclusory nature of Petitioner's unsupported assertion, Petitioner fails to demonstrate a reasonable probability that the trial would have resulted differently but for counsel's perceived error and therefore fails to satisfy the Strickland prejudice prong. 466 U.S. at 687. The Court, having concluded Petitioner failed to demonstrate that he suffered prejudice as a result of counsel's alleged deficiencies, need not determine whether counsel's performance was constitutionally deficient. See id. at 697.

### 9.   Counsel's Failure to Challenge the Methods of Analysis Used by the Government's Expert Witness

Duronio argues that Mr. Adams failure to request a Daubert hearing constitutes ineffective assistance of counsel because the Government's expert witness, Mr. Jones, did not base his opinions on the type of data reasonably relied upon by experts and his modes of analysis were incompatible with standard practices at the time. (Pet'r's Br. at 34-36). Duronio concedes that Mr. Adams had indeed challenged Mr. Jones's flow chart mode of analysis during cross examination. (Id. at 38). However, Petitioner places emphasis on Mr. Adams's failure to request the method's failure rate and his failure to ask whether it was peer reviewed. (Id.)

Petitioner here fails to make a claim or showing that but for Mr. Adams's actions, as opposed to Petitioner's own suggested methods, the trial would have resulted differently. See Gray, 878 F.2d at 712 ("Such a showing may not be based on mere speculation about what the witnesses [counsel] failed to locate might have said"). Petitioner fails to set forth what his

20

suggested line of questioning would reveal, or the impact that it would have on the outcome of the trial. Without doing so, Petitioner fails to satisfy the Strickland prejudice prong, rendering this claim of ineffective counsel deficient. 466 U.S. at 687.

While the Court need not determine whether counsel's performance was constitutionally deficient after having concluded Petitioner failed to demonstrate that he suffered prejudice as a result of counsel's perceived errors, it is worth noting Petitioner's claim directly criticizes Mr. Adams's strategic decision not to request a Daubert hearing, as well as the soundness of Mr. Adams's trial strategy during his cross examination of Mr. Jones. See id. at 697; see also (Pet'r's Br. at 34-38). As discussed above, under Strickland, counsel is presumed to have acted within the range of "reasonable professional assistance," and the defendant bears the burden of overcoming "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689. Petitioner here fails to provide sufficient evidence to overcome the presumption that Mr. Adams's decisions constituted sound trial strategy. His failure to do so provides grounds for the Court to deny his claim. See Zettlemoyer, 923 F.2d at 298 ("[Petitioner] cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention."); see also Brown, 2006 WL 3000960, at *9 (denying petitioner's claim of ineffective assistance of counsel because he failed to "meet the burden of overcoming the presumption that trial counsel's stipulation might be considered sound trial strategy falling within the wide range of reasonable professional assistance").

21

10.     **Counsel's "Tactical Errors" Throughout Trial**

In a span of almost ten pages, Duronio criticizes Mr. Adams's trial strategy on a number

of counts and offers specific techniques and questions that he believes Mr. Adams should have

employed throughout the course of the trial.[5]

The Government correctly points out that Petitioner does not represent that adopting his

proposed strategies or proposed lines of questioning would have created a reasonable probability

that the outcome of the trial would have resulted differently.  (Gov't's Br. at 34).  Having found

that Petitioner has failed to demonstrate that he suffered prejudice as a result of Mr. Adams's

alleged deficiencies, the Court need not determine whether counsel's performance was

constitutionally deficient. Strickland, 466 U.S. at 697.

However, it is also worth noting that the arguments set forth by Duronio in this particular

assertion of ineffective assistance of counsel are critical of Mr. Adams's trial strategies. With

that being said, Petitioner bears the burden of overcoming "the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. at 689.

Moreover, Petitioner must set forth facts to support the contention that trial counsel's assistance

fell below an objective standard of reasonable professional assistance.  Zettlemoyer, 923 F.2d at

298.  However, Petitioner here also failed to sufficiently support his allegations in order to

overcome the presumption that Mr. Adams's actions constituted sound trial strategy.


11.     **Counsel's Failure to Present "Positive Defenses"**

---

[5] For example, that: 1) Mr. Adams had the opportunity, but failed to, raise a doubt as to whether the prosecution met its burden of proving the charges against him (Pet'r's Br. at 46; Pet'r's Response, at 18-20); 2) Mr. Adams failed to file a motion for dismissal or for a directed verdict when it was "called for" (Id. at 46-47);  3) Mr. Adams failed to "point out" that the logic bomb was incapable of multiple executions as alleged in the indictment (Id. at 48); and 4) Mr. Adams failed to pursue a specific line of questioning when he questioned Mr. Jones (Id. at 49).

Duronio argues that Mr. Adams failed in his role as an advocate because he missed several opportunities to show the jury the possibility of interpreting certain facts as "possibly exonerating the defendant." (Pet'r's Br. at 53). In addition, Duronio argues that Mr. Adams failed to "bring out" certain theories of defense and also failed to elaborate more on the "extremely plausible" defense raised. (Id. at 54-55). Notably, Petitioner himself concedes that Mr. Adams set forth an "extremely plausible" explanation. See (Id. at 55).

This assertion of ineffective assistance of counsel fails for two reasons. First, Petitioner fails to set forth any basis to overcome the presumption that Mr. Adams's decision to present one consistent theory of defense constituted sound trial strategy. As discussed above, Strickland requires a presumption that counsel acted within the range of "reasonable professional assistance," and the defendant bears the burden of overcoming "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689. Petitioner's failure to overcome that presumption constitutes grounds for the Court to deny his claim of ineffective assistance of counsel. See Brown, 2006 WL 3000960, at *9; see also Zettlemoyer, 923 F.2d at 298 ("[Petitioner] cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations . . . [r]ather, he must set forth facts to support his contention.").

Second, a petitioner cannot establish a reasonable probability that the jury's verdict would have been different, if not for counsel's errors, based on mere speculation. See Giblin v. United States, No. 09-1286, 2010 WL 3039992, at *6 (D.N.J. Aug. 3, 2010) ("A speculative or hypothetical effect is not enough"). Given the speculative nature of Petitioner's arguments concerning the use of alternate defense theories, as opposed to Mr. Adams's one consistent and

concededly "extremely plausible" theory of defense, the Court concludes Petitioner failed to demonstrate a reasonable probability that trial would have resulted differently.  Given Petitioner's failure to satisfy the <u>Strickland</u> prejudice prong, the Court finds Petitioner did not meet his burden to show that he received ineffective assistance of counsel.  <u>See</u> 466 U.S. at 687.

### 12.   <u>Counsel's Failure to Obtain a Missing Witness Charge</u>

Here, Duronio argues that Mr. Adams's failure to get the missing witness charge for the author of the @Stake report "for whatever reason: lack of understanding of the requisite conditions, mis-interpretation [sic] of the law" constitutes ineffective assistance of counsel. (Pet'r's Br. at 59).  Further, he argues, that the testimony of the missing witness or the missing witness charge would "at least raise doubt of petitioners [sic] guilt in the eyes of the jury.  Or failing that, get the benefit of the missing witness charge."  (Pet'r's Response, at 21).

Petioner's assertion does not satisfy the <u>Strickland</u> prejudice prong and his claim must fail accordingly.  466 U.S. at 687.  Petitioner fails to demonstrate a reasonable likelihood that Mr. Adams would have been successful in obtaining a missing witness instruction and, if successful, the instruction would have altered the outcome of the trial.  "A speculative or hypothetical effect is not enough." <u>Giblin</u>, 2010 WL 3039992, at *6.  Notably, the Third Circuit has already addressed whether Mr. Adams would have succeeded in obtaining a missing witness instruction.  <u>See</u> <u>United States v. Duronio</u>, No. 06-5116, 2009 WL 294377, at *3 (3d Cir. Feb. 9, 2009) (finding that the potential witness, namely the author of the @Stake report, was "equally available to both parties, and there was therefore no foundation for any missing witness instruction").  In light of the Third Circuit's finding and Petitioner's resultant failure to demonstrate prejudice, the Court finds Petitioner did not meet his burden to show he received

ineffective assistance of counsel.  Having concluded that the Petitioner failed to demonstrate that he suffered prejudice as a result of Mr. Adams's alleged deficiency, the Court need not determine whether counsel's performance was constitutionally deficient.  Strickland, 466 U.S. at 697.

### 13.    Counsel's Failure to Adequately Defend the Securities Fraud Charges of the Indictment

Duronio argues that Mr. Adams's failure to call the Defense's security expert, as well as his cross examination of the Government's witnesses on the securities issue "fell far short of an expert on the stand bringing quantitative analysis and studied, objective, history to a jury" and thereby constitutes ineffective assistance of counsel.  (Pet'r's Br. at 62).  Notably, Petitioner concedes that Mr. Adams submitted a securities expert report to the Court.  (Pet'r's Br. at 60).

Again, Petitioner fails to make a claim or showing that but for Mr. Adams's decision to solely submit a securities expert report, as opposed to calling the securities expert to testify, the trial would have resulted differently, as required by the Strickland prejudice prong.  466 U.S. at 687.  Petitioner does not offer any examples of the type of relevant information that the securities expert would have set forth had he been called to testify.  Furthermore, there was no need to call the securities expert to testify, because Mr. Adams had already presented his report to the Court. See (Pet'r's Br. at 60); see also Beckford v. United States, No. 07-4427, 2008 WL 2559305, at *4 (D.N.J. June 24, 2008) (counsel's decision not to call witness that "would have done nothing more than echo [already introduced] evidence does not constitute ineffective assistance). Petitioner here failed to demonstrate whether calling the securities expert, after submitting his report as evidence, would have done anything other than echo evidence already introduced.

Therefore, the Court concludes counsel was not deficient in this regard. Id. [6]  Additionally,

Petitioner's inability to satisfy the Strickland prejudice prong renders this claim of ineffective

assistance of counsel meritless.  466 U.S. at 687.

### 14.    Counsel's Failure to Object to the Government's Opening Statement and Contradictions in Government Witness Testimony

Here, Duronio argues that Mr. Adams's failure to object to a false and "blatantly

prejudicial statement" made by the prosecutor during his opening statement, as well as his failure

to challenge the contradictory statements made by Government witnesses, Mr. Jones and Mr.

Khanna, while on direct examination constitutes ineffective assistance of counsel.  (Pet'r's Br. at

63-64).  Petitioner asserts that the prosecutor's statement regarding Petitioner's Individualized

Retirement Account (IRA) was false for two reasons: 1) an IRA, by its definition, cannot be

joint; and 2) it was not liquidated. Id. at 63.

Petitioner's argument with regard to Mr. Adams's failure to object to a statement made

during the Government's opening statement is flawed because: 1) he fails to demonstrate a

reasonable probability that the jury would have reached a different conclusion, as required by the

Strickland prejudice prong; and 2) he fails to overcome the presumption that counsel's

challenged action constitutes sound trial strategy.  466 U.S. at 687, 689.  Here, even assuming

the prosecutor's statement regarding Petitioner's IRA was false, the Court finds that Mr.

Adams's decision not to object to the prosecutor's statement does not sufficiently undermine the

Court's confidence in the outcome of Petitioner's trial, because the trial judge specifically

---

[6] In the context of his discussion regarding the securities fraud charge in his Response, Duronio additionally states that the Government admits to misconduct on page 38 of the Answer. (Pet'r's Response, at 21).  However, Petitioner did not previously raise this claim.  In any event, aside from quoting the Government's brief which praises Mr. Adams for limiting the scope of direct testimony, Petitioner does not argue that the alleged misconduct made the trial fundamentally unfair.  See generally US v. Liburd, 607 F.3d 339, 344 (3d Cir. 2010).

instructed the jury that the attorneys' statements are not evidence.  See id. at 694; see also (Trial

Tr. 9:7-9). Moreover, the Court cannot conclude that Petitioner overcame the presumption that

Mr. Adams's challenged decision constituted sound trial strategy, because the failure to object

during opening statement, "absent egregious misstatements by the prosecutor," falls within the

wide range of permissible legal conduct and does not constitute ineffective assistance of counsel.

See United States v. Lively, 817 F. Supp. 453, 466 (D. Del. 1993) (finding defense counsel's

failure to object during summation was a matter of trial strategy and did not deny the petitioner

reasonably effective assistance of counsel).


### 15.   Counsel's Acting as an Executive Functionary of the Court

Even affording the necessary deference to Petioner's *pro se* submission, Duronio's

argument here is incoherent.  Petitioner seems to be arguing that Mr. Adams should have

informed Judge Greenaway, the trial judge, that there was a "biasing of the Court" given

Petitioner's perceived conflict of interest between his previous Criminal Justice Act (CJA)

hearing and a newly discovered equity in his home. Petitioner asserts that Mr. Adams was

serving as "an instrument" of the Court when he informed Petitioner that Judge Greenaway

wanted him to take out equity in his home "and put it toward CJA costs." (Pet'r's Br. at 66-67).

Petitioner argues that Mr. Adams provided ineffective assistance of counsel because he "should

have pointed this fact out to the Court" and "should have informed the Judge that one of the

consequences of the request would necessarily be a biasing of the Court, whether the defendant

and family honored the request or not." (Id. at 67).

As the Government correctly points out, Petitioner here fails to argue that he had been

prejudiced by Mr. Adams's alleged deficiency and that the outcome of the trial would have

otherwise resulted differently. See (Gov't's Br. at 41-42). Petitioner therefore fails to satisfy the Strickland prejudice prong. 466 U.S. at 687. As a result, the Court need not determine whether counsel's performance was constitutionally deficient. See id. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one"). Additionally, Petitioner's vague and conclusory allegations are simply insufficient to justify relief. See Sepulveda, 69 F. Supp. 2d at 639-40 ("It is well settled that conclusory allegations are insufficient to entitle a petitioner to relief under § 2255").

Duronio states in his Reponse that he is referring to judicial bias, not ineffectiveness of counsel (Pet'r's Response, at 22-23), despite the fact that Duronio did not raise the claim in his Petition and also that he was informed of his rights in accordance with US v. Miller, 197 F.3d 644 (3d Cir. 1999) by Order dated April 12, 2010 and that he wrote a letter to the Court dated April 15, 2010 in which he stated that he wished to have his filing re-characterized as a 28 U.S.C. 2255 motion. Nor does Duronio's discussion of this issue in his Response shed additional light. Petitioner seems to state that Judge Greenaway requested money but does not provide any facts to support that allegation. (Pet'r's Response, at 22-23) ("Petitioner asserted Mr. Adams acted as an executive of the court when he brought plaintiff a request for money from Judge Greenaway while petitioner was on trial before the Judge . . . The request, in the circumstances, from a defendant in an ongoing criminal trial is asked for money by the judge, through his defense attorney, has the appearance of impropriety"). However, as stated above, vague and conclusory allegations do not justify relief.

## CONCLUSION

Based on the reasons set forth herein, Duronio fails to demonstrate that representation by counsel was either deficient or defective.  Accordingly, Petitioner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is denied without evidentiary hearing.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C.  § 2253(c)(2).

An appropriate Order accompanies this Opinion.

DATED: January 10, 2012

JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE